# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

VANITA HALIBURTON,

    *Plaintiff*,

v.                                    CASE NO. 13-CV-10084

COMMISSIONER OF               DISTRICT JUDGE TERRENCE G. BERG
SOCIAL SECURITY,                MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability, for Disability

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Insurance Benefits ("DIB"), and for Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Doc. 9, 13.)

Plaintiff was 49 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 7 at 47.) Plaintiff's employment history includes work doing alterations for five years, as an assembly line worker for less than one year, a cashier/retail clerk for three years, a mail handler for one year, and a magazine salesperson for less than one year. (Tr. at 326.) Plaintiff filed the instant claims on August 13, 2008, alleging that she became unable to work on June 30, 2004. (Tr. at 277, 283.) The claims were denied at the initial administrative stage. (Tr. at 92, 93.) In denying Plaintiff's claims, the Commissioner considered rheumatoid arthritis, other inflammatory polyarthropathies, and diabetes mellitus as possible bases for disability. (*Id.*) On August 2, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Jeanne N. VanderHeide, who considered the applications for benefits *de novo*. (Tr. at 19-40, 41-69, 70-89.) In a decision dated September 16, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 33.) Plaintiff requested a review of this decision on October 25, 2011. (Tr. at 15-16.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on December 18, 2012, when, after review of additional exhibits[2] (Tr. at 807-32), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-7.) On January 10, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the

ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

    **D.**    **ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements only through March 31, 2009, and that she had not engaged in substantial gainful activity since August 12, 2008, the amended alleged onset date. (Tr. at 24.) At step two, the ALJ found that Plaintiff's diabetes, degenerative disc disease of the lumbar spine, degenerative changes of the bilateral knees, bilateral carpal tunnel syndrome, bilateral shoulder degenerative changes, hypothyroidism, obesity, and depression were "severe" within the meaning of the second sequential step. (Tr. at 24-27.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 28-29.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. at 31-32.) The ALJ also found that on the alleged disability onset date, Plaintiff was 46 years old, which falls within the category of a younger individual. (Tr. at 32.) At step five, the ALJ found that Plaintiff retains the residual functional capacity to perform a limited range of sedentary work. (Tr. at 29-31.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 33.)

    **E.**    **Administrative Record**

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was treated in 2007 by Dan Hall, M.D., for diabetes, edema, back pain, hand pain, and malaise. (Tr. at 432-45.) It was noted that Plaintiff was diagnosed with rheumatoid arthritis in 2006. (Tr. at 437.) As of August 8, 2007, Plaintiff "report[ed] no fatigue, no fever, no sweats[,] . . . no exercise intolerance[,] . . . no chest pain, no palpitations, no edema, . . . no weakness, no numbness[,] . . . no depression, [and] no mania . . . ." (Tr. at 437.) It was consistently noted that Plaintiff was oriented to time, place, and person, her insight and judgment were good, her mood, memory and affect were all normal, she had a "normal gait, normal station," and her sensations

7

were "grossly intact." (Tr. at 438, 440, 443-44.) It was also consistently noted that despite her "chronic conditions" of diabetes and rheumatoid arthritis, Plaintiff's condition was "stable and improved on pharmacological therapy" without side effects. (Tr. at 437, 439.) On December 21, 2007, it was noted that Plaintiff "states on December 11 she was taken by vehicle to RMH ER and had a heart attack . . . Pt has not had any followup with cardiologist for heart problems she had that day." (Tr. at 442.)

Plaintiff was treated at the Richmond Memorial Hospital from 2006 to 2008 and again in May of 2010. (Tr. at 391-431.) On December 11, 2007, a CT scan of Plaintiff's brain was taken based on changes in mental status, but "[n]o evidence for acute intracranial abnormality" was found. (Tr. at 408.) On June 1, 2008, a CT of Plaintiff's brain taken due to an abnormal glucose level, elevated blood pressure, and numbness in limbs showed "[n]o evidence of acute intracranial process" and "[n]o significant interval change." (Tr. at 400, 562.) On August 26, 2008, it was noted that Plaintiff had "acute hyperglycemia." (Tr. at 392.) On September 22, 2008, after a "trauma[,]" x-rays of Plaintiff's right ankle showed "[m]ild soft tissue swelling" but "[n]o evidence of acute fracture or dislocation." (Tr. at 547.) On October 22, 2008, images of Plaintiff's lumbosacral spine showed "[n]o evidence for acute osseous abnormality." (Tr. at 450.)

Plaintiff underwent a consultative examination with Elaine A. Staten, D.O., on October 22, 2008. (Tr. at 451-57.) It was noted that Plaintiff had "[n]o nervousness, tension, mood, or depression." (Tr. at 453.) Dr. Staten noted "some tenderness" to the ankles, knees, and shoulders, but "they did not appear to be inflamed." (Tr. at 454-55.) Dr. Staten also noted that Plaintiff had an "intact sensory exam" but "did complain of some wrist pain but the wrist did not appear to be enlarged or inflamed." (Tr. at 455.)

A Physical Residual Functional Capacity ("RFC") Assessment was completed on November 5, 2008, by A.K. Goel, M.D. (Tr. at 458-65.) The assessment concluded that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and was unlimited in her ability to push and pull. (Tr. at 459.) The assessment found that Plaintiff was limited in handling and fingering, but there were no postural, visual, communicative, or environmental limitations established. (Tr. at 460-62.) The assessment concluded that Plaintiff was only "partially credible" and that her "impairments do not prevent the [plaintiff] from performing Medium work . . . ." (Tr. at 465.)

Plaintiff was also treated at the Richmond Community Care Clinic in 2009. (Tr. at 470-77.) It was noted that Plaintiff "states diagnosed with RA[.]" (Tr. at 471.) It was also noted that Plaintiff had "[n]o depression" and that she "[w]alks occasionally with daughter. Denies eating sweets, eats salads often. Smokes 1 PPD x 15 years, interested in quitting. Marijuana use occasionally x 20 years." (Tr. at 474.)

Another Physical RFC Assessment was completed on March 12, 2009, by K. F. Woods, M.D. (Tr. at 478-85.) The assessment concluded that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and was unlimited in her ability to push and pull. (Tr. at 479.) There were no postural, manipulative, visual, communicative, or environmental limitations established. (Tr. at 480-84.) The assessment noted that Plaintiff retained a "MEDIUM RFC w/ frequent handling and fingering." (Tr. at 485.)

Plaintiff also sought treatment in 2009 with the Sandhills Medical Group. (Tr. at 499-530, 564-605.) On April 20, 2009, it was noted that Plaintiff "does have a history of depression" and

has "[b]een very stressed out due to fact she is not able to get health insurance nor is able to work so we are going to try to help her as much as possible. I did give her the number to Carolina Behavior." (Tr. at 508, 571.) On June 2, 2009, it was noted that Plaintiff was "pretty much noncompliant" and that her blood sugar level was high such that Dr. Young "had a long discussion, more than 45 minutes, with this patient on things she is going to have to start working on, because patient has diabetes and if she does not take it seriously she is going to be hurt in the end." (Tr. at 504.)

On August 25, 2009, chest x-rays showed "[n]o radiographic evidence of acute cardiopulmonary disease." (Tr. at 519.)

On September 25, 2009, Dr. Young noted that "[p]retty much this patient is doing better. She just comes in for some medication because she does not have any insurance and she cannot afford it." (Tr. at 500.)

On September 29, 2009, Plaintiff sought treatment at the emergency room of the hospital for chest pains and was admitted for testing. It was noted that a urine toxicology report was done and "was positive for marijuana, so smoking cessation was implemented during this patient's admission." (Tr. at 528, 607.) Plaintiff was diagnosed with gastritis and was discharged. (Tr. at 529, 608.) It was noted that Plaintiff ambulated independently, her gait was normal, she was alert and oriented times three and she had "no known physical impairments[.]" (Tr. at 626.)

On October 1, 2009, images of Plaintiff's abdomen were taken and "[n]o acute abdominal pathology [was] suggested." (Tr. at 574.)

In December 2009, Plaintiff was treated at Firsthealth of the Carolinas, Inc. (Tr. at 531-38.)

In 2010 and 2011, Plaintiff was treated at the Detroit Receiving Hospital. (Tr. at 655-795.) During intake, Plaintiff stated that she was "here to establish care" and indicated that before her

10

husband's death two years prior, she "was on her husband's insurance, who was on disability." (Tr. at 661.) Plaintiff stated that she "wants her disability paper filled." (*Id.*)

On December 8, 2010, images were taken of Plaintiff's shoulders. The radiology report stated that there was "[n]o acute fracture or dislocation involving either shoulder" and

> [m]ild degenerative changes of both acromioclavicular joints. Specifically, there are small hypertrophic spurs projecting from the undersurfaces of bilateral acromions and distal clavicles, right side greater than left. These spurs may cause some degree of impingement upon their respective rotator cuffs. Please correlate with clinical presentation.

(Tr. at 769-70.) On the same date, images of Plaintiff's bilateral knees showed "[n]o acute fracture, dislocation, or large joint effusion involving either knee[,]" "[m]ild degenerative changes of both knees," and "[p]ossible tiny loose body within the left knee joint space." (Tr. at 771.)

On January 4, 2011, after having been treated in the emergency room, Plaintiff was given a notice that her "diabetes has been out of control. That means your blood sugar is staying too high." (Tr. at 690.) Plaintiff was given a clear set of instructions on how to maintain a healthier blood sugar level. (*Id.*) On March 4, 2011, Plaintiff sought treatment because her "blood sugar was high"; she was given intravenous medication and discharged. (Tr. at 683.)

Plaintiff's first scheduled referral to "rheumatology" was for March 9, 2011. (Tr. at 728.)

On March 29, 2011, an ultrasound of Plaintiff's pelvis showed "[u]terine fibroids" and a "[s]mall cyst in the right ovary." (Tr. at 715.)

On June 29, 2011, x-rays of Plaintiff's chest showed "[n]o acute cardiopulmonary process[.]" (Tr. at 697.)

Plaintiff was also treated at Team Mental Health Services from December 2010 to August 2011. (Tr. at 796-806.) Plaintiff's treatment plan included prescription medication and "case manager" support toward reaching her goals, which consisted of developing a nutritional and

11

physical fitness program, participating in a health exam, learning to live with medical issues, and developing a plan to find employment. (Tr. at 801-04.) On August 2, 2011, Frederick Carr, BS, SST, outpatient case manager, wrote a letter addressed to the Social Security Administration indicating that Plaintiff was diagnosed with major depressive disorder (recurrent moderate), cannabis dependence, and alcohol abuse, that she "is presently experiencing a great deal of unwarrented [sic] emotion such as sadness, loss of interest, guilt, hopelessness, anxiety and poor concentration," and that her "mental illness [is] progressive on multiple levels" such that "there is no general stagnation to her condition, limiting a time frame of recovery." (Tr. at 796.)

Plaintiff testified at the administrative hearing that she lives with her mother in an apartment on the sixth floor of a twelve-story apartment building. (Tr. at 47.) Plaintiff indicated that the building has an elevator and that there are no steps to the entrance of the building. (Tr. at 47-48.) Plaintiff testified that she has pain in her "knees, my hands, my shoulder and my lower back" and that the pain is "[c]onstant as far as in my knees and my shoulder and my back. My hands it comes and goes." (Tr. at 50.) Plaintiff indicated that she takes pain medication (Vicodin) five times a day. (Tr. at 51.) When asked whether it makes her pain any better, Plaintiff responded, "No, not really," but when asked whether anything makes her pain worse, Plaintiff responded that "not taking [the pain medication] makes it worse." (*Id.*) Plaintiff stated that she "sleep[s] a lot when taking the medicine." (*Id.*) Plaintiff gives herself insulin injections for her diabetes. (Tr. at 51-52.) She stated that she can "only raise [her] hand so high[,]" i.e., to chest level. (Tr. at 54.) Plaintiff stated that she has a driver's license but "because sometimes I can't feel the steering wheel so I haven't drove." (Tr. at 55.)

Plaintiff stated that she does not do any chores around the house or laundry or any grocery shopping because her "mother has a home caregiver" who does all these tasks. (Tr. at 55-56.)

12

Plaintiff indicated that if the caregiver is not there, she can make a meal in the microwave or get a bowl of cereal to eat. (Tr. at 55.) Plaintiff stated that she'll "help" load the dishwasher, but "that's what's hard with the depression that you can't hardly do anything." (Tr. at 56.) When asked what she does all day, Plaintiff responded that she watches television, specifically, "[r]eality shows, that's about it, court TV." (*Id.*) Plaintiff stated that she can sit for "[a]bout ten, 15 minutes" before she needs to "[g]et up." (Tr. at 57.) Plaintiff indicated that her most comfortable position at home is in her "recliner so I try to sit in that" and she "has a heater pad on it, one of the massagers." (*Id.*) Plaintiff stated she can only walk for "[h]alf of a block" at a time and that she uses a cane that was prescribed for her by Dr. Montoya. (Tr. at 57-58.) Plaintiff reported that she can lift a two liter bottle of pop and that she wears splints on her hands for carpal tunnel syndrome "every day" "[u]p until bed time" or when she bathes. (Tr. at 58-59.) Plaintiff indicated that she can pick up a pen and hold a glass of water, "but when it's numb it's hard for me to hold it." (Tr. at 59.) Plaintiff estimated she has two good days and five bad days per week. (*Id*.) Plaintiff also stated that she has swollen knees for which she takes "water pills." (Tr. at 60.)

      The ALJ asked the vocational expert ("VE") to consider an individual with Plaintiff's background who

> is able to perform sedentary work as defined by the regulations. Such an individual would require a sit stand option, sitting or standing alternatively at will provided the employee is not off task more than ten percent of the work day. No climbing ladders, ropes or scaffolds, occasional climbing of ramps or stairs, occasional stooping, kneeling, crawling, avoid all use of moving machinery and all exposure to unprotected heights and work is limited to simple, routine and repetitive tasks.

(Tr. at 65-66.) The VE indicated that such a person could not perform any of Plaintiff's past relevant work but could perform the 1,000 sports equipment assembler jobs and 1,500 surveillance monitor jobs available in southeast Michigan. (Tr. at 66.) If the hypothetical person was not able to do overhead reaching or handling and "required a hand held assisted device when walking,"

13

only the surveillance monitor job could be performed. (Tr. at 67.) The VE indicated that this testimony was consistent with the Dictionary of Occupational Titles ("DOT"), but also noted that the DOT does not address sit/stand options and that he based his opinion on his thirty years of experience "counseling, evaluating and placing persons with disabilities in Southeast Michigan." (Tr. at 67-68.)

### F.   Analysis and Conclusions

#### 1.   Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to perform a limited range of sedentary work. (Tr. at 29-31.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a)(1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10, 1983 WL 31251, at *5.

After review of the record, I suggest that the ALJ utilized the proper legal standard in her application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

#### 2.   Substantial Evidence

14

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 9.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that: (1) the "ALJ's adoption of the Vocational Expert's Opinion violate[d] SSR 83-12 relating to sit/stand options and the need for an assistive device for ambulation" (Doc. 9 at 13-16); and (2) the "ALJ failed to include her finding of moderate difficulties [in maintaining concentration, persistence, and pace] in the hypothetical posed to the VE making her adoption of the VE's findings improper." (*Id.* at 16-18.)

    **a.**    **Social Security Ruling 83-12**

Plaintiff argues that the "ALJ's adoption of the Vocational Expert's Opinion violate[d] SSR 83-12 relating to sit/stand options and the need for an assistive device for ambulation." (Doc. 9 at 13-16.) As to the requirement that Plaintiff be permitted to use an assistive device, the ALJ's final hypothetical asked the VE to add that the person "required a hand held assisted device when walking[.]" (Tr. at 67.) Therefore, the VE's testimony addressed that issue. As to the sit/stand option, SSR 83-12 requires only that "'[i]n cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base.'" *Walker v. Chater*, 117 F.3d 1421, 1997 WL 369445, at *6 (6th Cir. July 1, 1997); 1983 WL 31253, at *4. In the instant case, the ALJ did not rely exclusively on the grids but rather employed the testimony of a VE; therefore, SSR 83-12 was satisfied. *See Sharp v. Barnhart*, 152 F. App'x 503, 506-07 (6th Cir. 2005) (light work); *Baker v. Comm'r of Soc. Sec.*, No. 12-cv-14530, at *8 (E.D.

Mich. Dec. 9, 2013) (light work); *Whiting v. Comm'r of Soc. Sec.*, No. 13-10313, 2013 WL 5595359, at *7 (E.D. Mich. Oct. 11, 2013) (sedentary work).

### b.      Concentration, Persistence or Pace

Plaintiff argues that the "ALJ failed to include her finding of moderate difficulties [in maintaining concentration, persistence, and pace] in the hypothetical posed to the VE making her adoption of the VE's findings improper." (Doc. 9 at 16-19.) The ALJ's hypothetical included a limitation to simple, routine and repetitive tasks. (Tr. at 65-66.)

I first note that there is no evidence that Plaintiff suffers from moderate limitations in maintaining concentration, persistence or pace. There is no mental RFC assessment in this case nor does any other medical record address issues of concentration, persistence or pace.

Moreover, even if there were a mental RFC assessment or some other evidence that indicated that Plaintiff has moderate limitations in maintaining concentration, persistence or pace, this argument is "not uncommon and the case law resolves it both ways." *Hernandez v. Comm'r of Soc. Sec.*, No. 10-cv-14364, 2011 WL 4407225, at *9 (E.D. Mich. Aug. 30, 2011) (collecting cases). The *Hernandez* court stated that

> a hypothetical simply limiting a claimant to unskilled work may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence, or pace . . . . However, the Court also finds that there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of, for example, "unskilled work" but excludes a moderate limitation in concentration. Rather this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's hypothetical and RFC assessment.

*Id.* at *10 (citations omitted). Looking at the record as a whole, I suggest that the ALJ's findings are supported by substantial evidence.

In the instant case, there is a paucity of evidence regarding Plaintiff's mental condition. Plaintiff's physicians consistently noted that Plaintiff was oriented times three and that her

judgment and memory were good. (Tr. at 438, 440, 443-44.) In addition, Plaintiff's doctors consistently noted that there was "no depression." (Tr. at 438, 453, 474.) Plaintiff did not seek any treatment for mental health issues until December 2010, and her treatment consisted of prescription drugs only. (Tr. at 801-04.)

I therefore suggest that the record as a whole provides substantial evidence supporting the ALJ's hypothetical and the RFC assessment limiting Plaintiff to simple, unskilled work. *See Infantado v. Astrue*, 263 F. App'x 469, 477 (6th Cir. 2008) (substantial evidence supported ALJ's decision where, although the psychiatrist found "moderate" limitations in the plaintiff's ability to maintain attention and concentration for extended periods, the psychiatrist noted the plaintiff's daily activities and concluded that the plaintiff was capable of performing simple tasks on a sustained basis); *Burnett v. Comm'r of Soc. Sec.*, No. 10-cv-14739, 2012 WL 3870362, at *7 (E.D. Mich. Sept. 6, 2012) (where physician finding moderate limitations in concentration, persistence and pace also concluded that the plaintiff was able to perform unskilled work, ALJ's reliance on limitation to unskilled work was not improper); *Cummings v. Comm'r of Soc. Sec.*, No. 10-11621, 2011 WL 3958473 (E.D. Mich. Sept. 8, 2011) (ALJ's omission of concentration and pace limitations in the hypothetical was reasonable where doctor who concluded that the plaintiff had "serious concentration and attention difficulties" also found that his "ability to work may not be severely impaired as long as the job does not involve any appreciable amount of contact with people"); *Young v. Comm'r of Soc. Sec.*, No. 10-cv-11329, 2011 WL 2601014 (E.D. Mich. May 23, 2011) (although the plaintiff cited to moderate limitations noted in the assessment, the plaintiff failed to mention that the same assessment also concluded that the plaintiff was capable of unskilled work).

17

Finally, I suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessments and was in harmony with the objective record medical evidence. It was consistently noted that Plaintiff had a "normal gait, normal station" and her sensations were "grossly intact." (Tr. at 438, 440, 443-44, 626.) It was also consistently noted that despite her "chronic conditions" of diabetes and rheumatoid arthritis, Plaintiff's condition was "stable and improved on pharmacological therapy" without side effects. (Tr. at 437, 439.) CT scans of Plaintiff's brain were all normal. (Tr. at 400, 408, 562.) Images of Plaintiff's lumbosacral spine were all normal. (Tr. at 450.) Chest x-rays showed "[n]o radiographic evidence of acute cardiopulmonary disease." (Tr. at 519, 697.) Images of Plaintiff's abdomen showed "[n]o acute abdominal pathology" (Tr. at 574) and images of Plaintiff's shoulders showed "[n]o acute fracture or dislocation involving either shoulder" and only "[m]ild degenerative changes of both acromioclavicular joints." (Tr. at 769-70.) Finally, images of Plaintiff's bilateral knees showed "[n]o acute fracture, dislocation, or large joint effusion involving either knee[,]" but only "[m]ild degenerative changes of both knees[.]" (Tr. at 771.) Furthermore, Plaintiff's treatment consisted of prescription drugs only. Such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007). I therefore suggest that the ALJ's conclusion that Plaintiff is not disabled is supported by substantial evidence.

### 3. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                       s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
                                                 CHARLES E. BINDER
Dated: January 15, 2014                    United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  January 15, 2014                By     s/Patricia T. Morris
                                                              Law Clerk to Magistrate Judge Binder